THE YALE LOCK MANUF'G Co. *v.* THE SCOVILL MANUF'G Co.

*(Circuit Court, D. Connecticut.  June 29, 1880.)*

1. RE-ISSUE NO. 8,783—RE-ISSUE—REV. ST., § 4916.—A re-issue can only be granted for the invention which formed the subject of the original patent.

2. SAME—SAME—SAME.—The specification may be amended so as to make it more clear and distinct ; the claim may be modified so as to make it more conformable to the exact rights of the patentee, but the invention must be the same.

    *Powder Co.* v. *Powder Works,* 98 U. S. 126, followed.

    A re-issue is valid where the specification describes the invention as consisting of two separate and independent features, although it was described in the original specification as consisting of those two features in combination.

    A claim in a re-issue for a post-office box with a metallic door and frames is void, where the original invention was described as a series of metallic doors and door-frames, with a series of wooden pigeon-holes, forming a continuous metallic front.

3. SAME—SAME—DISCLAIMER.—It is proper to disclaim unlawful claims introduced into a re-issue.

    *O'Reilly* v. *Morse,* 15 How. 62.
    *Schillinger* v. *Gunther,* 16 O. G. 905.

*Frederic H. Bells* and *Causten Browne,* for plaintiff.
*Charles R. Ingersoll,* for defendant.

SHIPMAN, D. J.   This is a bill in equity, based upon the alleged infringement of re-issued letters patent, No. 8,783, dated July 1, 1879, which was issued to the plaintiff as assignee of Silas N. Brooks, administrator of Linus Yale, Jr., for an improvement in post-office boxes.   The original pat-

ent was issued to said Brooks on September 19, 1871, and
has been re-issued three times.

The post-office boxes which were in use before the date of
the invention were either a series of wooden pigeon-holes, each
box having a permanent glass front, or a series of wooden
pigeon-holes, each box having a wooden door in front, fur-
nished with a lock and key.    The contents of the first-named
kind were inaccessible to the lessee of the box until he was
waited upon by a clerk.    The latter kind was not econom-
ical of space, and was not considered safe.

In May, 1867, General William L. Burt, then postmaster of
Boston, conceived the idea of a series of wooden boxes, fin-
ished with metallic doors and frames for each box, with the
rest of the wooden front covered or veneered with a continu-
ous metal casting.    He caused a plan to be prepared of a
box in the Boston post-office, which plan clearly showed his
idea.    A casting of the metallic front was made from this
plan, and was delivered to General Burt, and was sent to the
plaintiff to be filled with doors and locks.    This continuous
metallic frame, or front, was discarded on account of its
actual or supposed impracticability, and in its stead Mr.
Yale invented the improved box front for a series of boxes,
which was subsequently patented by his administrator, and
with which the Boston post-office was supplied.    So far as is
disclosed by the evidence, the Burt box frame was never used
in a post-office, and was merely experimental.    It originated
the invention, but there is no evidence which can justify a
finding that Burt was the inventor.

The invention is thus described in the original patent:
"This invention relates to an improvement in the construc-
tion of the fronts of post-office boxes, and consists in making
said fronts, including the doors and box frames, of metal,
and in securing the frames to the wooden pigeon-holes by
rivets, connecting the frames with each other at top, bot-
tom, and sides.    The body of these boxes is to be made of
wood, in the usual manner, namely, a series of pigeon-holes;
but the front of the box and the door frame are made of iron
or other suitable metal.    Each door frame or box front is so

v.3,no.5—19

made that it aids in covering the edge of the wooden partitions or pigeon-holes, and is connected with the other frames above, below, and on each side of it, in such manner that the frames make a continuous frontage, no part of which can be removed (from the outside) without pulling down other parts and breaking the wood-work, so that a surreptitious removal of the front of any box, in order to get possession of its contents, is practically impossible. Each frame, made as before stated of metal, has all around it a flange *aa*, which protects the outside of the wood-work. The sides of the frame, *bb*, enter and fit closely against the wood forming the pigeon-holes, and may be continuous or notched out at intervals, and each frame has attached to it one leaf of two or more hinges, *cc*. The door is of iron, solid at the top, where the lock, *d*, is attached, and having an opening, *e*, below, in which a plate of glass is secured. I prefer to locate rods, *ff*, behind the plate, to prevent the introduction of a hand if the glass be broken, and so to form the door that when shut it enters within the frame, (see *gg*,) so that it cannot be lifted from its hinges. When the frames are all in place, each frame is riveted through the wood-work to its four neighbors, (see *hh*, figure 2,) and thus a continuous iron frontage is formed. Each door has a small spring bolt, *i*, and a lock, *d*, attached to it, the two operating together and forming, in the hands of the postmaster, a perfect safeguard against all entrance to the box by means of the key, and is more particularly set forth in my application for a patent therefor made equal date with this."

The claims of the original patent were as follows:

"1. The combination of several box frames with each other, and with pigeon-holes, as described, by means of rivets passing through the frames, and the wood-work entering between said frames, the combination being substantially as described. 2. The above, in combination with the flanges, making part of the frames, and protecting and enclosing the exterior of the wood-work, substantially as set forth."

From the history of the art, and the language of the specification, it appears that the invention consisted in a tier or

series of metallic doors and metallic door frames, in combination with a series of wooden pigeon-holes, for post-office boxes; said series of door frames being so constructed with relation to the woodwork, and so connected with each other, that the frames make a continuous frontage, no part of which can be removed on the outside without pulling down other parts and breaking the wood-work. The described method by which the frames were fastened to the wood-work, and were connected with each other, was by fitting the sides of the frames, provided with ears or legs, closely against the inside of the pigeon-holes, and by riveting each frame through the ears within the pigeon-holes to the wood-work and to the four neighboring frames. The claims follow the specification in making this method of construction a necessary part of the invention.

The history of the art shows that the actual invention was broader than the patent. The invention was not simply an improvement in metallic fronts, but Yale was the first inventor of a practicable metallic front. By the patent, his invention was limited to a particular method of construction, or its equivalent, viz.: The frames must be riveted to each other through the wood-work, so that, if a rival simply riveted or fastened the frames to the wood-work, without fastening them to each other, (the flanges of the frames being sufficiently wide to cover the wood-work, and in sufficiently close juxtaposition to repel entrance to the box from the outside,) the principle of the invention would be preserved, and its substantial advantages would be retained by a very simple modification of the patented device. Instead of a single rivet, uniting the adjoining frames to each other, one or two rivets could be used, which should fasten the frame to the wood-work either from the inside or outside of the frames; and although the structure could be more easily broken, yet practically the frames would be so connected to each other by close juxtaposition and tightly-fitting joints that the substantial advantages of the invention would be retained.

A re-issue was, therefore, desirable, and it was important to so enlarge the specification by amendment as to describe

an invention of broader scope than that specified in the original patent, if such amendment could be made without invalidating the re-issue by the introduction of new matter. In the last re-issue the invention is described as follows:

"This invention consists in an improvement in the construction of post-office boxes, and its chief feature is the combination of a tier of pigeon-holes, made of wood, with a continuous frontage of metal, such frontage consisting of doors and their frames, which latter cover the ends of the boards which form the pigeon-holes. A series of wooden pigeon-holes, open at the rear, and covered at the front or on the outside by a permanent glass front, is very old, and such a series was used for post-office boxes and in hotels as a receptacle for keys, cards, letters, etc. There has also been in use a series of wooden pigeon-holes, each provided at one end with a door, as described in the patent granted to Jacob H. Beidler, May 28, 1866, but in this patent the door is described as hinged to the wood, and the construction is, consequently, insecure, as an ordinary pocket-knife or small chisel will, even in inexperienced hands, suffice to cut away the wood or pry off the door, so that the boxes may be entered.

"Pigeon-holes made of iron or other metal are difficult to construct, and very costly; but such pigeon-holes, each provided with an ordinary metal door, would be sufficiently secure. Such a degree of security, at comparatively a low cost, is attained by covering the front of a series of wooden pigeon-holes with a continuous metallic frontage—that is, a frontage which presents a continuous surface of metal; or, in other words, a surface which covers the ends of the wooden pigeon-holes in such a manner that those portions of the wood to which the metallic frames are attached cannot be attacked when the doors making part of the frontage are closed. In constructing Yale's invention the body of the boxes, or the series of pigeon-holes, is to be made of wood, in any usual manner, and the fronts thereof, viz., the doors and their frames, are to be made of iron or other suitable metal.

"Each door frame is of such size that it aids in covering the ends of the wooden partitions that form the pigeon-holes

to which it is applied; and these frames (see figure 1) are of such size and shape that, where a series of them are combined with a series of pigeon-holes, they cover the whole of the ends of the wood.

"Each door frame is a plate of metal, *aa,* which, when in place, overlaps a part of the ends of the wood-work surrounding the pigeon-hole, the outside of the frame enclosing a greater area than the orifice of the pigeon-hole, and each frame has an ear, *bb,* which enters the pigeon-hole; but this ear may be continuous, or notched out at intervals. The door is of iron, or other metal, solid at top, and having an opening, *e,* below, in which a plate of glass is secured, and is hinged to the frame as at *cc.* It is preferable to locate rods, *ff,* behind the plate, so as to prevent the introduction of a hand if the glass be broken, and so to form and hinge the door that when shut it enters within the frame, so that it cannot be lifted from its hinges when shut.

"When the frames are all in place each frame is riveted or bolted to the wood-work, to fasten it thereto, and is also riveted or bolted to its four neighbors to secure the frames to each other. See *hh,* figure 2. Thus, each frame is secured to the wood-work, so that it cannot be removed till the rivet or the wood-work is cut away or broken.

"When all the frames are in place a continuous metallic frontage, protecting the wood-work, is presented upon the outside of the series of boxes—that is, the side where the public can approach the boxes.

"Each door has a lock attached to it, the bolt of which is actuated through the intervention of an arm, *k,* in the manner and for the purposes set forth in a patent granted for the invention of Linus Yale, Jr., on the twenty-fourth day of October, 1871—No. 120,177.

"An iron door in an iron frame is not claimed as of Yale's invention, as such doors have been used in safe vaults and for furnaces."

It will be seen that the specification of the re-issue makes the invention to consist of two parts: *First,* a metallic frontage of doors and their frames, the latter covering the ends of

the boards which form the pigeon-holes; and, *second,* the riveting or bolting of each frame to its four neighbors, to secure the frames to each other.

The important question in the case is whether this specification enlarges the invention by the introduction of new matter, and the re-issue is therefore rendered void. The re-issue describes the invention in broader terms than were used in the original specification or in the original claims, and, therefore, putting a narrow construction upon the words "applied for," the re-issue describes a broader invention than was originally applied for, because the claims and specification were harmonious; but it describes the invention which the history of the art and the patent shows should have been applied for, and the same invention which, aided by the light which is thrown upon the original patent by the knowledge of the state of the art, we can see formed the subject of the original specification, but was there cramped within too narrow bounds. There is more matter in the re-issue than was contained in the original, and it is matter which presents the invention as consisting of two separate and independent features, whereas, by the original, it was presented as consisting of those two features in combination; but the original imperfectly described the invention which was really made, though it correctly described the invention which was embraced in the claim. Is such matter new matter within the meaning of the statute?

The principles by which this question is to be decided have been laid down in a recent decision of the supreme court as follows:

"These re-issues, being granted in 1872, were subject to the law as it then stood, being the act of July 8, 1870, the fifty-third section of which (reproduced in section 4916 of the Revised Statutes) relates to the matter in question. It seems to us impossible to read this section carefully without coming to the conclusion that a re-issue can only be granted for the same invention which formed the subject of the original patent of which it is a re-issue. The express words of the act are 'a new patent for the same invention;' and these

words are copied from the act of 1836, which in this respect was substantially the same as the act of 1870. The specification may be amended so as to make it more clear and distinct; the claim may be modified so as to make it more conformable to the exact rights of the patentee, but the invention must be the same. So particular is the law on this subject that it is declared that 'no new matter shall be introduced into the specification.' This prohibition is general, relating to all patents; and by 'new matter' we suppose to be meant new substantive matter, such as would have the effect of changing the invention, or of introducing what might be the subject of another application for a patent.

"The danger to be provided against was the temptation to amend a patent so as to cover improvements which might have come into use, or might have been invented by others, after its issue. The legislature was willing to concede to the patentee the right to amend his specification so as fully to describe and claim the very invention attempted to be secured by the original patent, and which was not fully secured thereby in consequence of inadvertence, accident, or mistake, but was not willing to give him the right to patch up his patent by the addition of other inventions, which, though they might be his, had not been applied for by him, or, if applied for, had been abandoned or waived. For such inventions he is required to make a new application, subject to such rights as the public and other inventors may have acquired in the meantime." The court also quote with apparent approbation the remarks of Mr. Justice Grier, in *Goodyear* v. *Day,* partially reported in 2 Wall. Jr. 283. Goodyear's patent of 1844 claimed only the process of vulcanizing India rubber, and inadvertently omitted to claim the exclusive use of the product. In 1849 it was surrendered, and two new patents were issued, one for the process, and the other for the composition. The validity of these re-issues came before Judge Grier. He decided that both patents were for the same invention, and, in reply to the objection that the latter patent claimed more than the original, he said: "If the latter patent

is for precisely the same invention, art, or discovery as that described in the first, the objection that it claims more is a mistake of fact. If the last patent differs from the first only in stating more clearly and definitely the real principles of the invention, so that those who wish to pirate it may not be allowed to escape with impunity through the imperfection of the language used in the first, there has arisen one of the cases for which it was the intention of the act of congress to provide, and the objection is worthless in point of law." *Powder Co.* v. *Powder Works,* 98 U. S. 126.

I understand that the supreme court, in the case cited, and in other cases, intend to declare that in a re-issue the same, and only the same, invention which was attempted to be secured in the original patent, but which was there imperfectly stated, and was not fully secured through inadvertence, accident, or mistake, can be restated so that the principles or details of the invention may be presented clearly and accurately; but that other inventions of the patentee, or modifications of the patented invention, which had not been attempted to be secured, or had not been applied for, cannot be embraced in a re-issue, but must be the subject of a new application; and that "courts should regard with jealousy and disfavor any attempt to enlarge the scope of an application once filed, or of a patent once granted, the effect of which would be to enable the patentee to appropriate other inventions made prior to such alteration." *Railway Co.* v. *Sayles,* 97 U. S. 554.

But if the patentee has made a palpable mistake, and has limited his real invention by a misstatement of its principles, so that he is about to lose the fruit of his labor, he should be permitted to restate, and, if need be, enlarge his specification so as to include the same invention which was plainly the subject of, but was not fully secured by, the original patent; although, literally, the enlarged invention is one which he did not apply for in his original specification, because that specification, by a misstatement of his actual invention, applied for a narrower patent than he was entitled to have.

As thus explained there is no substantive new matter in the re-issued specification. The claims of the re-issued patent are as follows:

*First.* The combination, substantially as specified, of a series of metallic door frames and doors, with a series of wooden pigeon-holes, whereby a series of post-office boxes with a continuous metallic frontage is formed.

*Second.* The combination, substantially as described, of a series of wooden pigeon-holes with a series of metallic door frames and doors, and with rivets or bolts which attach the frames to the wood-work, whereby a continuous metallic frontage, secured to the wood-work of pigeon-holes, is obtained.

*Third.* The combination, substantially as described, of a series of wooden pigeon-holes with a series of metallic door frames and doors, and with rivets or bolts, which attach the frames both to the wood-work and to each other, the combination being substantially such as described.

*Fourth.* The combination of a metallic door with a glass panel, and with a frame to which the door is hinged, said frame being so constructed as to cover a part of the ends of the wooden partition, forming pigeon-holes, and being applied thereto, the combination being substantially as specified.

*Fifth.* The combination of a post-office box or pigeon-hole, open at the rear, with a metallic frame and door to protect the front end of it.

The fourth and fifth claims are admitted to be for a single box, and not to be for a series of the elements. They are, in my opinion, void. The invention was not, in fact, for a post-office box with a metallic door and frames. It was for a series of metallic doors and door frames, with a series of wooden pigeon-holes, said frames forming a continuous metallic front. The scope and object of the invention was to provide a safe and economical set of boxes; and, although it is necessary to make one box before a series can be made, each box was described and was made solely with relation to a tier or series of boxes; and, if a single box was Yale's invention, it would be in violation of the principles which have been quoted to include it in the re-issue. The first claim is for a series of

metallic doors and metallic door frames, with a series of wooden pigeon-holes, forming a continuous metallic frontage, substantially as described, frames and wood-work being fastened together in some suitable manner.

The second claim contains the limitation that the means of securing frames to wood-work is by rivets or bolts. The third claim contains the limitations of the first claim of the original patent, and is not alleged to have been infringed.

As thus construed there is no question in regard to the infringement of the first and second claims. The defendant's boxes are a series of separate and complete wooden boxes with metallic doors and metallic door frames; the flanges of the door frames being so wide that a continuous metallic frontage is formed, and the frames being closely fastened to the front and sides of the wood-work. When arranged in a series the boxes are secured to each other in this way. Each box is provided on both sides with vertical grooves, and on the top and bottom with transverse grooves. When the boxes are placed in position, i. e., side by side and one above another, wooden pins are placed in these grooves, and thus the boxes are keyed or fastened together. The unlawful claims introduced into the re-issue it is proper to disclaim. *O'Reilly* v. *Morse,* 15 How. 62; *Schillinger* v. *Gunther,* 16 O. G. 905.

Let there be an interlocutory decree for an injunction, and for an account of profits and damages, as respects the first and second claims of the patent, but without costs.