PARKER & WHIPPLE Co. and another *v.* YALE CLOCK Co. and others.[1]

*(Circuit Court, D. Connecticut. October 2, 1883.)*

PATENTS FOR INVENTIONS—REISSUE No. 10,162—HOTCHKISS CLOCK—LANE CLOCK.
     The first eight claims of reissued patent No. 10,162, issued March 14, 1882, to Arthur E. Hotchkiss, for improvements in clock movements, and which describes an invention of which no trace is to be found in the original specification, and manifestly other and different from that which was the subject of the original patent, are void.

In Equity.
*John S. Beach, Chas. E. Mitchell,* and *John K. Beach,* for plaintiffs.
*Benj. F. Thurston, Chas. R. Ingersoll,* and *S. H. Wagner,* for defendants.

SHIPMAN, J. This is a bill in equity to restrain the defendants from the infringement of reissued letters patent No. 10,162, issued March 14, 1882, to Arthur E. Hotchkiss, for improvements in clock movements. The original patent was dated November 4, 1879. The application for the first reissue, No. 9,656, granted to said Hotchkiss April 12, 1881, was filed in the patent-office January 22, 1881. The application for the present reissue, No. 10,162, was filed July 19, 1881. The Parker & Whipple Company are exclusive licensees under the original and reissued patents. At the date of the invention expensive clocks of tiny size were being made, which met with favor from the public. They were convenient and attractive, and the main object of the patentee (the original specification says a leading object) was to make a good time-keeping clock of the like small size, which could be furnished to the public at the small price which characterizes the manufacture of Connecticut clocks. The clock was devised for this end, unquestionably with much study and painstaking, and I shall assume that the invention as claimed in the reissue was both novel and patentable. Much skill and ingenuity have been displayed in attacking and defending these contested points, but as I think that a vital point of the plaintiff's case depends upon the validity of the reissue, I shall confine myself to that question.

[1] Affirmed. See 8 Sup. Ct. Rep. 38.

The patentee, in his original specification, stated the nature of his invention as follows:

"This invention relates to that class of time-keepers in which a fixed annular rack or internally toothed wheel is employed to aid a spring barrel in rotating the train of wheels. The nature of said invention consists, partly, in the combination of a fixed internally toothed circular rack and a concentric going barrel or plate with a mainspring, a transmitting wheel rotating with said barrel, and a fixed clock movement. It also consists in arranging the operating parts of the time-piece on a fixed plate, and attaching the same to the back of the clock-case by means of tongues which extend out from said plate through perforations in the back of said case. It also consists in providing said tongues with broad shoulders, which cause said plate to stand out from the back of the clock-case, so as to leave space for the mainspring between them. It also consists in the combination of a mainspring having a perforated end with a lateral finger extending from the broad part of one of said tongues, whereby said mainspring is firmly held at its fixed end, yet easily detached. It also consists in the combination, with a fixed plate, which confines the mainspring and supports the movement of a rotating plate arranged in front of said fixed plate, and provided with a hub which extends through said fixed plate and is connected to the winding end of the mainspring. It also consists in adapting to and combining with the hub thus constructed a key having a screw-threaded winding part for engaging with said hub, and a recessed part for engaging with the prismatic end of the center shaft. It also consists in constructing the annular rack or internally toothed wheel with an annular recess for receiving the pillar plate and thereby economizing space. It also consists in constructing the pillar plate and pillars in one piece, and attaching said pillars to the front plate by twisting them. It also consists in substituting an automatic winding dog, operating like an escapement verge, for the click and spring ordinarily used. It also consists in constructing the case with an opening at the bottom, and adapting the key and the adjusting nut of the pendulum ball to one another, so that the adjustment of the said ball may be effected conveniently from the outside of the case. It also consists in providing said ball with a spring which will force it down into place, and with a guide which will prevent it from turning."

The 12 claims of the original patent were confined to these details thus enumerated in the specification.

In March, 1880, the Parker & Whipple Company entered into a contract with the Yale Clock Company to manufacture the Hotchkiss clock, at a stipulated price per clock, the licensees furnishing the dies and tools for such manufacture. About 50,000 clocks were made by the defendants and delivered to the licensees between June 17 and December 27, 1880. During this period the defendant Frederick A. Lane, superintendent of the Yale Clock Company, made the infringing clock. It did not contain a single patented feature of the Hotchkiss clock, but in respect to every other leading feature the parts of the two clocks are interchangeable. The Lane clock was immediately patented, was put upon the market, and is being manufactured by the Yale Clock Company.

An examination of the Hotchkiss patent showed that the vital parts of the invention were not alluded to in the specification or in the claims. Perhaps the fact that the clock had three wheels,

and their position, might have been understood by an expert from drawing No. 6. That drawing was not made for the purpose of showing the wheels, and it is manifest from the specification that the patentee did not suppose they had anything to do with his invention, which he did suppose lay in entirely other parts of the clock. The model showed a completed clock, and contained whatever was and was not invented by Hotchkiss.

In the specification of the second reissue, the patentee omitted the entire description, which has been quoted and inserted in the following:

"My invention relates to an improvement in clock movements, the object being to make a clock movement which shall be simple and durable in its construction, of small initial cost in manufacture, and the several parts of which shall be relatively arranged in such manner that the movement may be inclosed in a small and compact case. To this end the invention consists in dividing the train into two parts; in arranging the divisions of the train in a frame having three plates; in providing an additional wheel and pinion between the escape wheel and center wheel; in making the three wheels between the escape wheel and center wheel with the same number of teeth and of the same size; in arranging the pivots of the three arbors carrying the three like wheels and pinions between the escape wheel and center wheel in the circumference of circles which are concentric with the center arbor; and in other minor improvements as the invention is hereinafter more fully described and explained by reference to the drawings."

In accordance with this statement the plaintiff's experts claimed upon the trial that the invention consisted generally in the division of the train into two parts by means of a frame having three plates, the point of division being between the center wheel and the center pinion; and, secondly, in the arrangement, between the center wheel and the escape wheel, of three wheels which are driven by the center wheel in the circumference of a circle which is concentric to the center arbor, the three wheels being arranged on a semi-circle concentric to the center pinion. This general outline of the invention is stated with accuracy and completeness in eight claims of the reissue, four of which relate to the division of the train into two parts in a frame having three plates, while the other four relate to the arrangement of the three wheels. The tenth and eleventh claims relate to details which were specified in the original patent, but which are not used by the defendant. The defendants infringe the first eight claims.

The position of the plaintiffs is that the invention of the reissue was the invention of Hotchkiss, and was shown in the model accompanying the original application for a patent, and that, therefore, the description in the reissue is not to be regarded as new matter, but as a correction of a misstatement in the description contained in the original specification.

The defendants making no point in regard to laches in applying for a correction of the original patent, deny the plaintiffs' premise and conclusion. They deny the premise because they say that the orig-

inal description limited the invention to that class of time-keepers in which a fixed annular rack or internally toothed wheel is employed to aid a spring barrel in rotating the train of wheels, and that this construction only was shown in the model, and that the importance of the Lane invention consisted in the abandonment of the "planet wheel" and the substitution therefor of the ordinary mainspring.

If the premise was true, they deny the conclusion, because it is a fact, the truth of which is apparent, that in the original specification and drawings the patentee gave no hint that he regarded the construction described in any one of the first eight claims as forming any material or immaterial part of his invention.

Waiving the question whether the patentee, if he could reissue at all, was not confined to the peculiar class of clocks which he had described in his original specification, he having given no suggestion or indication that any other sub-combination than those which he had named would be of value or would perform an office of its own, and conceding that if the subject of the first eight claims could be introduced into a reissue they could also include a clock not having the driving gear of the model, I proceed to consider the question whether the invention described in these claims, being an invention of which no trace is to be found in the original specification, and being manifestly other and different from that which was the subject of the original patent, is an invention which can be included in the reissue.

The plaintiffs plant themselves upon the well-known phraseology which has been used both by the supreme court and by its individual members, that a reissue (if seasonably applied for) can include what was shown, substantially suggested, or indicated in the original specification, drawings, or model, and say that the real invention of Hotchkiss existed, and therefore was shown in the model, and therefore a reissue can take it in. I do not think that prior to the definition of new matter in *Powder Co.* v. *Powder Works,* 98 U. S. 126, such a reissue as this is would have found favor in the eyes of a court, for the eight claims which are in controversy are a total abandonment of the principles which are stated in the original patent to be those of the invention, and are an introduction into the reissue of a subject-matter which has no relation to the original patent, except that each patent relates to clocks. But, since the decision to which I have referred, taken in connection with other later decisions which throw light on the subject, the question is one which seems to me to be settled.

In *Powder Co.* v. *Powder Works* the court say:

"The legislature was willing to concede to the patentee the right to amend his specification so as fully to describe and claim the very invention attempted to be secured by his original patent, and which was not fully secured thereby in consequence of inadvertence, accident, or mistake; but was not willing to give him the right to patch up his patent by the addition of other inventions, which, though they might be his, had not been applied for by him, or, if applied for, had been abandoned or waived."

In applying the *Powder Works Case* to the facts detailed in *Yale Lock Manuf'g Co.* v. *Scovill Manuf'g Co.* 18 Blatchf. C. C. 248, [S. C. 3 Fed. Rep. 288,] this court used this language, which is cited by the plaintiffs with commendation, as applicable to the present case:

"If the patentee has made a palpable mistake, and has limited his real invention, by a mistatement of its principles, so that he is about to lose the fruit of his labor, he should be permitted to restate, and, if need be, enlarge, his specification so as to include the same invention which was plainly the subject of, but was not fully secured by, the original patent, although literally the enlarged invention is one which he did not apply for in his original specification, because that specification, by a mistatement of his actual invention, applied for a narrower patent than he was entitled to have."

The facts in the *Yale Lock Case* were very different from those in this case. It might as well be said that the Copernican system was a mere restatement of the principles which had been misstated in the Ptolemaic system, as that this reissue was a restatement and enlargement of the principles of the invention which was the subject of the original patent.

I am not unmindful of the strong equities in favor of the plaintiffs growing out of the error of the inventor in regard to the nature of his invention, and of the fact that Mr. Lane availed himself of the error in a manner and by an expedition which indicated that he was more intent upon commercial success than upon nice observance of the golden rule; but I am clearly of opinion that the statute in regard to reissues forbids such a radical transformation of a patent as was attempted in this reissue.

The bill is dismissed.