## WOOSTER *v.* HANDY.

*(Circuit Court, S. D. New York. July 22, 1884.)*

1. EQUITY—PRACTICE—RULE 88,—REHEARING.

   Rule 88 of the equity rules prescribed by the supreme court of the United States, provides for a rehearing after a final decree of an appealable character.

2. SAME—INTERLOCUTORY DECREES.

   Interlocutory decrees remain under the control of the court and subject to its revision until the whole matter in controversy is disposed of by final decree.

3. SAME—EFFECT OF SUPREME COURT DECISION AFTER INTERLOCUTORY AND BEFORE FINAL DECREE.

   When, after an interlocutory decree, and before a final decree in a case, the supreme court renders a decision affecting the case, this court will make its final decree in accordance with the decision of the supreme court, and as if that decision had been made before any decision in the case.

4. PATENTS FOR INVENTIONS—REISSUES—REQUISITES FOR.

   Where, by an application for the reissue of a patent, it is sought merely to enlarge a claim, a clear mistake and inadvertence must be shown, and a speedy application for its correction, without unreasonable delay, must be made.

5. SAME.

   Where, by the reissue of a patent, it is sought merely to enlarge a claim, a patentee cannot wait until other inventors have produced new forms of improvement and then apply for an enlargement embracing the new forms.

6. SAME—DELAY IN REISSUE OF PATENT—WHEN COURT TO DECIDE UNREASONABLE.

   Where it is apparent, from a comparison of the patents, that a reissue is made to enlarge the scope of the patent, the court may decide whether the delay in obtaining the reissue was unreasonable, and the reissue void.

7. SAME—INFRINGEMENT OF PATENTS—BILL, WHEN DISMISSED.

   Where a reissue of a patent is sought merely to expand its claims so as to embrace structures brought into use between the time of the issuing of the original and the time of the application for the reissue, and which were not infringements of the claim of the original, there being no proof of mistake or inadvertence, the right to a reissue is lost by a delay of more than 12 years, and, the reissue being made and suit brought for the infringement thereof, the bill will be dismissed.

8. SAME—DEATH OF INVENTOR—EFFECT ON REISSUE OF PATENT—ASSIGNEE—
   RIGHTS OF—REV. ST. § 4895.
     After the death of the inventor, a reissue of the patent may be obtained upon
   application made, and a corrected specification signed by the assignee, under
   Rev. St. § 4895.

In Equity.

*Frederic H. Betts*, for plaintiff.

*Benjamin F. Lee, John Dane, Jr.*, and *William H. L. Lee*, for defendant.

BLATCHFORD, Justice. This suit is brought on two reissued patents. One is reissue No. 6,565, granted to George H. Wooster, July 27, 1875, (on an application for a reissue filed June 22, 1875,) for an "improvement in machines for making ruffles," the original patent, No. 37,550, having been granted to Pipo and Sherwood, January 27, 1863, on the invention of John A. Pipo. The other is reissue No. 6,566, granted to George H. Wooster, July 27, 1875, (on an application for a reissue filed July 19, 1875,) for an "improvement in sewing-machines for making band-ruffling," the original patent, No. 46,424, having been granted to E. C. Wooster, February 14, 1865, on the invention of Thomas Robjohn. The case was brought to a hearing on pleadings and proofs, and a decision was rendered in April, 1881, (*Wooster* v. *Blake*, 8 FED. REP. 429,) in favor of the plaintiffs, on both patents, on which an interlocutory decree was entered, April 30, 1881. The decree adjudged that No. 6,565 was valid so far as claims 1, 7, 8, and 10 were concerned; that those claims had been infringed; and that an account of profits and damages should be taken as to such infringement. It stated that, as No. 6,565 had expired by its own limitation, no injunction was granted in reference to it. The decree also adjudged that No. 6,566 was valid so far as claims 8 and 9 were concerned; that those claims had been infringed; that an account of profits and damages should be taken as to such infringement; and that a perpetual injunction should issue as to said claims. The decree further said: "No adjudication is herein made as to any other claims than those above mentioned, of either of said letters patent, in any respect;" and it reserved the question of costs, and of increase of damages, and all further questions, until the master's report should come in.

The defendant's rufflers involved, and held, by the decision, to infringe both patents, were known as the Johnston ruffler and the Toof ruffler, and were sold to be attached to sewing-machines, for ruffling purposes. In regard to the Pipo patent, No. 6,565, the decision considered several patents and inventions set up on the question of novelty, and held that they could not avail. On the defense of the invalidity of the reissue, as not for the same invention as the original, the decision said: "There is no evidence that anything is found in the reissue No. 6,565, which is not to be found in the description or drawing of the original patent, or in the model accompanying the ap-

plication for that patent." As to the Robjohn patent, No. 6,566, the decision considered the question of novelty, and sustained the patent. Although the defense that the reissue was not for the same invention as the original was set up and urged, and it was considered and overruled, no special observations were made in the decision, in regard to it. The remarks in regard to the Pipo reissue were considered as applying to it.

Some progress was made in taking testimony on the accounting before the master, when, on the ninth of January, 1882, the cases of *Miller* v. *Brass Co.* 104 U. S. 350, and *James* v. *Campbell*, Id. 356, were decided by the supreme court. The defendant thereupon presented to this court, on March 22, 1882, a petition, with notice of an application to be made March 31, 1882, that the prayer of the petition be granted. The application was adjourned and not heard till June, 1884. The petition states that the said decisions in 104 U. S. "fix and establish rules of law in respect to reissues, different from those stated in numerous decisions of the circuit court of the United States for the Second circuit in numerous earlier cases; that said decisions of the supreme court are directly in point, as affecting the validity of the said Pipo and Robjohn reissues; and that the said Pipo reissue and the said Robjohn reissue must be declared void in accordance with the doctrines laid down in said cases." One of the prayers of the petition is for a rehearing of the cause on the questions of law involved, in view of the said decisions of the supreme court, and that the interlocutory decree be opened.

The rehearing asked for is not such a rehearing as is the subject of rule 88 of the equity rules prescribed by the supreme court. That rehearing is one after a final decree, after a decree which is of an appealable character. The present decree is not an appealable decree. The rehearing asked for is a reconsideration of the law of the case on the question of the validity of the reissues, in view of the decisions by the supreme court referred to. The test applied by this court, as announced by it in deciding the case, was that the reissues were to be sustained as to their claims, inasmuch as there was nothing found in them which was not found in the descriptions or drawings of the original patents, or in the models accompanying the applications for those patents.

The principle, the application of which is invoked by the defendants, is well settled. In *Perkins* v. *Fourniquet*, 6 How. 206, 209, it is said, that interlocutory decrees remain under the control of the court and subject to its revision, until the master's report comes in and is finally acted upon by the court, and the whole of the matters in controversy are disposed of by a final decree. In *Fourniquet* v. *Perkins*, 16 How. 82, there were an interlocutory decree, an accounting under it, a report of a master, exceptions to the report, and an argument thereon. On the argument, the circuit court reconsidered the opinion it had expressed on the merits in the interlocutory decree, and,

believing that opinion to be incorrect, dismissed the bill. The plaintiff appealed to the supreme court, and that court held the decree of dismissal to be right. It added:

"The counsel for the appellants, however, objects to the decree of dismissal, because it was made at the argument upon the exceptions to the master's report, and is contrary to the opinion on the merits, expressed by the court in its interlocutory order. But this objection cannot be maintained. The case was at final hearing at the argument upon the exceptions, and all of the previous interlocutory orders in relation to the merits were open for revision and under the control of the court."

This court, then, is to interpret the law of reissues as it would have done if the cases referred to had been decided by the supreme court before this court made its decision in this case. The rule laid down by the supreme court is, that where it is sought merely to enlarge a claim, there must be a clear mistake and inadvertence, and a speedy application for its correction, with no unreasonable delay; that, in such a case, a patentee cannot wait until other inventors have produced new forms of improvement, and then apply for such an enlargement of his claim as to make it embrace those new forms; and that when it is apparent, from a comparison of the two patents, that the reissue is made to enlarge the scope of the patent, the court may decide whether the delay was unreasonable, and the reissue, therefore, void. This view has been repeatedly asserted and applied by the supreme court in numerous cases decided since those in 104 U. S.

As to the Pipo reissue, No. 6,565, it is plain that the right to reissue was lost by the delay of more than 12 years, because the case is one of a mere expansion of the claims, beyond anything stated in the original patent as the invention, and with no proof of mistake or inadvertence, and it is sought to make the new claims embrace, in this case, structures brought into use between the time of the issue of the original patent and the time of the application for the reissue, and which were not infringements of the claim of the original patent. There was but one claim in the original. There are 13 in the reissue. It would serve no useful purpose to enlarge on this subject as to No. 6,565, for the counsel for the plaintiff concedes that, under the reiterated decisions of the supreme court, this court must dismiss the bill as to that reissue.

But in regard to the Robjohn reissue, No. 6,566, the plaintiff contends that the case is different; that claim 2 of the original patent covered the defendant's structures; that claims 8 and 9 of the reissue are substantially only repetitions of claim 2 of the original; or that, at least, claim 2 of the original was so worded as to be ambiguous, and so inoperative, and claims 8 and 9 of the reissue are valid, as removing the ambiguity. The specifications of the original and reissued patents are as follows, the parts in each which are not found in the other being in italics:

ORIGINAL.

"Be it known, that I, Thomas Robjohn, of the city, county, and state of New York, have invented *a new and useful improvement* in machinery for making band-ruffling; *and I do hereby declare that the following is a full, clear, and exact description of the same, reference being had to the accompanying drawings forming part of this specification, in which*

"Figure 1 is a top view of *my invention and of* the bed-plate of a sewing-machine, *to which it is applied. Figure* 2 is a longitudinal vertical section of the same. *Figures* 3 and 3* are opposite end views of the ruffling machinery. *Figures* 4 and 4* are transverse sections of the band-folder. *Figure* 5 is a top view of the guides without the ruffling knife. *Figure* 6 is a section of the plaiting or ruffling device, parallel with Fig. 2, but showing *the knife in* a different position. *Figure* 7 is a face view of a ruffle made by the machine. *Figure* 8 is a transverse section of the same.

"Similar letters of reference indicate corresponding parts in the several figures.

"*This invention consists in the combination, with a sewing-machine, of a novel system of guides, and a plaiting or ruffling knife, whereby* one strip of muslin or cloth has both edges turned in, and is folded longitudinally, to form a double band, and plaited or formed into a ruffle, and the band and ruffle are sewed together,

REISSUE.

"Be it known, that I, Thomas Robjohn, of the city, county, and state of New York, have invented *certain improvements* in machinery for making band-ruffling, *of which the following is a specification:*

"*This invention relates to improvements in rufflers for use with sewing mechanism, and consists in a ruffling blade or knife adapted to engage a strip of material to be ruffled, in combination with a feeding mechanism adapted to operate against the strip to which the ruffled strip is connected; also, in the combination, with a ruffling blade, of a guide for a strip to be ruffled, and also with a guide to fold and present a band about the edges of the ruffled strip, as is hereinafter more fully described, such folding guide also being adapted to hem or turn the edges of the folded band.*

"Figure 1 is a top view of *the* invention, *showing its arrangement upon* the bed-plate of a sewing-machine. *Fig.* 2 is a longitudinal vertical section of the same. *Fig.* 3 and 3* are opposite end views of the ruffling machinery. *Fig.* 4 and 4* are transverse sections of the band-folder. *Fig.* 5 is a top view of the guides without the ruffling knife. *Fig.* 6 is a section of the plaiting or ruffling device, parallel with Fig. 2, but showing a different position *of the same. Fig.* 7 is a face view of a ruffle made by the machine, *and Fig.* 8 is a transverse section of the same. *Figure* 9 *is a section of the presser, taken at right angles to the line of feed, showing the under surface cut away, to allow the passage of a hem on the ruffle.*

"Similar letters of reference indicate corresponding parts in the several figures.

"*As illustrated in the drawings,* one strip of muslin or cloth has both edges turned in, and is folded longitudinally, to form a double band, and *another strip is* plaited or formed into a ruffle, and the band and *the* ruffle are *both* sewed together at the same time, thus forming a band-ruffle at one operation.

*all* at the same time, thus forming a *double* band-ruffle at one operation.

"To enable others skilled in the art to make and use my invention, I will proceed to *describe* its *construction and* operation.

"A is the bed-plate of *the* sewing-machine. B is the guide by which the turning in of the edges of, and the *longitudinal* folding of, the band, *a*, of the ruffle *are* performed, said guide being attached *rigidly* to the *gauge*-plate, C, and secured to the bed-plate, A, by a screw, D, and steady pins, *b*, *b*. This guide, B, is made of brass or other metal, and has one end *of the form of* a tube, and *nearly flat, as shown in figure* 3, *the* width *of the said tube being* equal to the width of the strip of cloth of which the band, *a*, of the ruffle is to be formed, *such strip being shown in section, in red color, in figure* 4, 4*. At a short distance from *the* end *shown in figure* 3, one side of *the* tube is cut away, leaving the guide in the form of a transversely curved plate, with its edge turned over on the concave side, as shown in *figure* 4, and towards the other end its curvature increases, and the turning in of the edges is increased until the plate is in the form of the letter V, or nearly double, and its edges *have* a *complete* double turn, as shown at *c*, *c*, in *figure* 4*, so that the strip, *entering* at the end shown in *figure* 3, and *being* drawn through, will come out folded along the center, and *with* both edges turned in, as shown *in red outline*, in *figure* 4*.

"The arrangement of this guide upon *the* sewing-machine is such that this folding of the band may be effected *in the movement of the latter* towards the needle by the *ordinary feeder, r, of the machine.* The marginal portions, *c*, *c*, of the folder, by which the edges of the band are turned inward, do not extend quite to 'the needle-hole, *d*, *but are cut away at some distance therefrom*, as shown at *s*, in *figures* 1, 3*, and 5, though the

"To enable others skilled in the art to make and use my invention, I will *now* proceed to *illustrate the most complete and perfect form of* its operation, *as combined with a sewing-machine.*

"*At* A is *represented* the bed-plate of *a* sewing-machine. B is the guide by which the turning in of the edges of, and the folding of, the band, *a*, of the ruffle *is* performed, said guide being attached to the *gage*-plate, C, and secured to the bed-plate, A, by a screw, D, and steady pins, *b*, *b*. This guide, B, is made of brass or other metal, and has one end *formed as* a tube, and *of a* width *substantially* equal to the width of the strip of cloth of which the band, *a*, of the ruffle is to be formed. *The receiving end of this guide is shown at Fig.* 3, *and*, at a short distance from *such* end, one side of *said* tube is cut away, leaving the guide in the form of a transversely curved plate, with its edge turned over on the concave side, as shown in *Fig.* 4, and towards the other end its curvature increases, and the turning in of the edges is increased, until the plate is in the form of the letter V, or nearly double, and its edges *are given* a double turn, as shown at *c*, *c*, in *Fig.* 4*, so that the *band or plain* strip *to which the ruffle is to be united by stitches, when entered* at the end shown in *Fig.* 3, and drawn through *the guide*, will come out folded along the center, and both edges *may be* turned in *or hemmed*, as shown in *Fig.* 4*, *provided the strip is wide enough to extend into and entirely fill the width of the guide.*

"The arrangement of this guide upon *a* sewing-machine is such that this folding of the band may be effected *as the band is moved* towards the needle by the *feeding device, r.* The marginal portions, *c*, *c*, of the folder, by which the edges of the band are turned inward, do not extend quite to the needle-hole, *d*, as shown at *s*, in *Figs.* 1, 3*, and 5, though the *guide* which produces the central fold *has a nose, e, extending* some distance

*portion* which produces the central fold *extends* some distance beyond the needle-hole, to preserve the form of the fold while the stiching is being performed.

"E is a guide for the strip of cloth of which the ruffle, *e*, is to be formed, consisting of a flat metal tube, of a width equal to that of the said strip, arranged in front of, and partly within, the folding guide, B, parallel with the feed movement, to deliver the strip between the two edges of the band, as the latter *issue* from the said guide, B, *and approach the needle.*

"This *guide has a slight downward inclination towards the needle, and its lower end rests on the bedplate close to the feeding device and the needle-hole, and its* bottom *part, i,* is made with projections, *f, f,* to enable it to pass between and at the sides of the toothed surfaces of the *feeding dog.*

"The upper part of the said guide has *near its sides* two longitudinal slits, *g, g,* commencing at a short distance from the end furthest from the needle-hole, and extending to the end next the needle, *and* the end of the tongue, *h,* thus formed, *is made* to press upon the strip, *in* passing through the guide, *and so* keep it flattened, and *produce friction enough upon it to keep it* straight, on its way *into the band.* The said tongue, *h, is shortened so that it* does not extend so near to the needle-hole, *by from a quarter to three-eighths of an inch,* as the bottom *part, i, of the guide,* (see Fig. 2,) thereby leaving the said *part, i,* exposed for the plaiting or ruffling knife, *F,* to work upon, as will be presently described. *This guide, E, is attached rigidly to the lower part of the guide B.*

"The plaiting or ruffling knife is made with a straight and moderately sharp, but not a cutting, edge, of a length equal to the width of the strip of which the ruffle is to be composed, the said edge being arranged at right angles to the feed movement. *The said knife is attached by* an elastic shank, *j,* to a bent lever, G, *the said shank keeping* the edge pressed *hard*

beyond the needle-hole, to preserve the form of the fold *in the band* while the stiching is being performed.

"E is a guide for the strip of cloth of which the ruffle is to be formed, consisting of a flat metal tube, of a width equal to that of the said strip, *and it is shown as* arranged in front of, and partly within, the folding guide, B, parallel with the feed movement, *and adapted* to deliver the *ruffled* strip between the two edges of the band, *a,* as the latter *issues* from the said guide, B.

"*The bottom plate, i, of the guide serves as the support for the strip or material to be ruffled, separates it from the fabric to which it is to be united, and the ruffling blade, acting on such material to be ruffled, carries it forward over the support, i, and presents it in a folded condition to the stitching mechanism.* This bottom *plate, i,* is made with projections, *f, f,* to enable it to pass between and at the sides of the toothed surfaces of the *feeder, r; and* the upper part of the said guide has *formed in it* two longitudinal slits, *g, g,* commencing at a short distance from the end furthest from the needle, and extending to the end next the needle, the end of the tongue, *h,* thus formed, *being adapted* to press upon the strip passing through the guide *with sufficient force to* keep it flattened and straight, on its way *to the action of the ruffling blade.* The said tongue, *h,* does not extend so near to the needle-hole as the bottom *plate, i,* (see Fig 2,) thereby leaving the said *plate* exposed for the plaiting or ruffling *blade or* knife to work upon, as will be presently described.

"The plaiting or ruffling blade or knife is *generally* made with a straight and moderately sharp, but not a cutting, edge, of a length equal to the width of the strip of which the ruffle is to be composed, the said edge being arranged at right angles to the feed movement, *and connected with, or forming part of,* an elastic shank, *j, attached to* a bent lever, G. *In its*

*down* upon the *bottom part of the guide, and holding* the knife *with a downward inclination towards the needle-hole, at an angle of about* 30° *to the surface of i.*

"The lever, G, works on a fixed flulcrum, *t*, at the back of the bed-plate, and derives motion, in one direction, from the rod which works the needle-arm, and, in the opposite direction from *a* spring, I, or has imparted to it, by any other mechanical means, the necessary motion to produce a movement of the knife *upon the bottom, i, of the guide, E, towards and from the needle-hole, d.* This movement of the lever may be varied by means of a set-screw, to give the knife a greater or less movement, according as finer or not so fine plaiting or ruffling is desired, the movement of the knife requiring to be as much greater than the feed movement as the intended width of the plaits. This knife commences its movement before the feed, and, when the knife has moved a distance equal to the intended *width* of the plaits, the feed movement commences, and the movement of the knife continues at the same speed as the feed movement, while the *latter* carries both band and ruffle *towards the needle.*

"The presser, H, of *the* sewing-machine, *to which my invention* is *applied, is made* of a width sufficient to cover the whole width of the ruffle, and a sufficient portion of the band; but it is made shorter than usual at the end where the work enters beneath it, in order to allow the knife to come close or nearly close to the needle; and its under side is beveled at that end, to allow the knife to pass under and push the plaits under it, as it gathers them up by its movement *towards the needle. The operation of gathering up the plaits is illustrated in figure* 6, *where the strip which forms the ruffle is shown in red color.*

"The sewing-machine in connection with which this invention is ap-

*forward movement* the edge *of the ruffling blade or knife* is pressed upon the *support or plate, i, between the front part of which and* the knife *the strip to be ruffled is held.*

"The lever, G, works on a fixed fulcrum, *t*, at the back of the bedplate, and derives motion in one direction from the rod which works the needle-arm, and in the opposite direction from *the* spring, I, or has imparted to it, by any other mechanical means, the necessary motion to produce a movement of the *blade or* knife. This movement of the lever may be varied by means of a set-screw, to give the knife a greater or less movement, according as finer or not so fine plaiting or ruffling is desired, the movement of the knife requiring to be as much greater than the feed movement as the intended width of the plaits. This knife commences its movement before the feed, and, when the knife has moved a distance equal to the intended *widths* of the plaits, the feed movement commences, and the movement of the knife continues at the same speed as the feed movement, while the *feeding device* carries *forward* both *the* band, or *plain part to which the ruffle is attached, and the* ruffle.

"The presser, H, *which, as shown,* is the *foot* of *a* sewing-machine, is *represented* of a width *substantially equal to the width of the blade or knife, or* sufficient to cover the whole width of the ruffle, and a sufficient portion of the band; but it is made shorter than usual at the end where the work enters beneath it, in order to allow the knife to come close or nearly close to the needle; and its under side is beveled at that end, to allow the knife to pass under and push the plaits under it, as it gathers them up by its movement. *The lower surface is recessed or cut away at the side, as shown at m, in Fig.* 9, *to allow the hem of the ruffle (Fig.* 8) *to pass under without lifting the presser from the rest of the goods; and the foot is also recessed at n, to receive the band of the ruffle.*

"The sewing-machine in connection with which this invention is ap-

plied may be of any of the kinds in common use.

"To set the invention in operation, the strip of cloth to form the band, *a*, is inserted through the guide, B, and the longer strip, to form the ruffle, (which has been previously hemmed along one edge,) is inserted through the guide, E, and under the knife, F, and with its hemmed edge in front or outward, and the ends of both strips brought under the presser, and, when the presser has been let down upon them, the machine is set in operation *as for ordinary sewing. As* the two strips are drawn forward by the *feed movement,* the band is folded and has its *edges* turned in, and the *ruffle* strip *is* delivered *into the fold of* the band, *and ruffled* by the action of the knife, as hereinbefore described, and *sewed into the band by* the needle passing through both the upper and lower parts *of the band* close to the edges *thereof.*

"In the ruffling operation, the knife, *F*, is prevented from acting on *the under part of* the band, by the *extension of the lower part, i, of the guide, E, beyond the upper part and below the knife, the said part of the band passing under the extended portion of i, and the ruffle strip passing over it for the knife to act upon, and the said extended portion protecting the lower part of the band from the action of the knife.*"

plied may be of any of the kinds in common use.

"To set the invention in operation, the strip of cloth to form the band, *a*, is inserted through the guide, B, and the longer strip, to form the ruffle, (which has been previously hemmed along one edge,) is inserted through the guide, E, and under the *ruffling blade or* knife, and with its hemmed edge in front or outward, and the ends of both strips *are* brought under the presser, and, when the presser has been let down upon them, the machine is set in operation. The two strips are drawn forward by the *feeding device,* the band is folded and has its *edge* turned in, and the strip *resting on the support, i, is ruffled,* delivered *to the unruffled material or* the band, by the action of the knife, as hereinbefore described, and *the ruffled and plain fabric are united by the stitching mechanism of the sewing-machine,* the needle, *when operating with the band,* passing through both the upper and lower parts *thereof,* close to the edges *of the band.*

"In the ruffling operation the *blade or* knife is prevented from acting on the band *or plain fabric beneath the ruffle,* by the *support or plate, i.*

"*No claim is made to an open guide in combination with ruffling mechanism, as that is the form of gages which has been previously used; nor to a separating device, except in combination with the ruffling mechanism arranged and operated above the table.*

"*The ruffled strip may be stitched, as formed, on to a plain fabric introduced under the guide, E, and between the support or plate, i, and the feeder, r, the latter engaging and moving the plain fabric with the ruffle attached, while the ruffling knife or blade engages only the strip to be gathered, and carries it forward to the needle.*

"*The end of the arm, G, carrying the ruffling blade, is turned backward at g', moves back and forth above the guide, and permits the blade carried by such arm to operate under the edge of the plain, unruffled material laid on top of the ruffled strip. As the blade moves forward, it first engages the material to be ruffled resting on*

*the supporting and separating plate, just at the end of the tongue, h, and, as the blade moves forward the material to be ruffled, its edge is held or pressed firmly against the material, and, when the fold made in the material is properly formed for the action of the needle, then the blade is retracted, and, as it returns to its backward position, the pressure of its end on the piece to be ruffled is lessened. The end of the ruffling blade moves beyond the edge of the supporting or separating plate, and carries the fold forward, in the ruffled strip, beyond the edge of said plate, and, on the return of said blade, the end of the supporting or separating plate, between which and the blade the material rests, is held by the end of said plate, i, preventing the plate, in its backward movement, from carrying back with it the fold formed in the strip to be ruffled.*

*"I am aware that a rough-surfaced feeder and ruffler have been employed to engage a piece of material to be ruffled, forming the gather in and moving the ruffled piece forward, the ruffler and feeder both engaging the ruffled strip, and, in connection with such mechanism, a separator has been employed to separate a band from the ruffled strip, the band being laid on the surface of the ruffled strip engaged on its under side by the ruffler and feeder made as four-motioned feeding devices; and I am also aware of United States patent No. 14,475.*

*"I do not claim, as the invention of Thomas Robjohn, a flexible ruffling blade adapted to operate on a strip to be ruffled when sustained on the cloth-plate of a sewing-machine; nor do I claim such a blade combined with a guide to present a single unfolded band strip to the ruffled strip; nor do I claim such a blade connected with and operated by a rocking arm or lever moved from a vibrating member of the needle-operating mechanism, and controlled as to its backward movement by a set-screw; nor do I claim any of the specific combinations of devices claimed in an application filed June 22, 1875, for reissue of United States patent No. 37,550,.*

*granted to John A. Pipo, January 27,*
*1863, said combinations of devices, as*
*expressed in such reissue claims, being*
*the invention of the said Pipo."*

The original Robjohn patent had two claims, as follows:

"1st. The combination with each other and with a sewing-machine, of a guide for turning in the edges of and folding one strip of cloth to form a double band, a guide for guiding another strip of cloth into such band to form a rufile, and a plaiting or ruffling knife, the whole operating substantially as herein specified. 2d. In combination with the ruffling knife acting above the strip which is to form the ruffle, I claim the extension of a portion of the bottom, *i,* of the guide, E, or its equivalent, below the said knife, in such a position as to be interposed between the ruffle strip and the lower part of the band, substantially as and for the purpose herein specified."

The reissue has 18 claims, as follows:

"(1) In a ruffling or plaiting mechanism, the combination of a ruffling or plaiting blade with a folding guide, whereby a strip of any suitable fabric may be properly guided to form and fold a band about the edge of a ruffle, substantially as described. (2) The combination of a ruffling or plaiting blade and folding guide for properly directing the strip to form and fold a band about the edges of a ruffle, with stitching or sewing mechanism, substantially as described. (3) In a plaiting or ruffling mechanism, the combination of a guide having an inclosed channel-way, for properly directing the strip to be ruffled, with the plaiting or ruffling blade, substantially as described. (4) The combination of a plaiting or ruffling blade and an inclosed channel-way or guide for properly directing the strip to be ruffled, with a stitching or sew-eng-mechanism, substantially as described. (5) The combination of a plaiting or ruffling blade and guide for properly directing the strip to be ruffled, and a folding guide for conducting a separate strip to form and fold a band on the edge of the said ruffled strip, with sewing mechanism adapted to unite the band and ruffle, substantially as described. (6) The combination with a ruffling or plaiting blade of a guide for conducting a strip to form a band for the ruffle, and adapted to fold or hem both edges of said band. (7) The combination of a ruffling or plaiting blade, a guide adapted to conduct a strip to form a band and to fold both edges of said band, with a sewing mechanism, substantially as described. (8) The combination of a ruffling or plaiting blade or knife, arranged and operated above the cloth-plate, with a supporting or secondary plate, separate from the cloth-plate, between which and the blade or knife the fabric to be ruffled is held and advanced by the blade, substantially as described. (9) A plaiting or ruffling blade, arranged above the cloth-plate of a sewing-machine, and adapted to operate upon a surface other than such cloth-plate, whereby a strip of goods can be plaited or ruffled above a plain piece, substantially as described. (10) In a ruffling or plaiting mechanism, a presser or holder, cut away at its lower side to permit the passage of a hem, substantially as described. (11) A folding guide, adapted to conduct and fold a band, and provided with a nose or extended portion, to direct and hold the band after it is folded, substantially as described. (12) The inclosed guide, in combination with the flexible tongue, adapted to press upon the goods passing through said guide, to keep said goods flattened and straight, substantially as described. (13) In a ruffling mechanism, the combination of a blade adapted to engage and fold or ruffle one piece of material, with a feeder adapted to engage and move forward the unruffled material, on which the ruffled material is delivered and secured by stitching, substantially as described. (14) In a ruffling or plaiting mechanism, the combination of a plate adapted to separate the material to be ruffled from the unruffled

material to which it is to be attached, with a reciprocating blade, adapted to press upon and engage the upper side of the material to be ruffled, to move forward with such material and present a fold for the action of the needle, and, on the return stroke of the blade, to relax its pressure on the material to be ruffled, substantially as described. (15) The combination of the ruffling-blade, adapted to move forward beyond the end of the supporting or separating plate, with the separating plate, adapted to retain the ruffled material from returning with the ruffling blade, substantially as described. (16) The combination of a guide, adapted to control each edge of the piece to be ruffled, and a ruffling or plaiting blade, having its edge extended across the material to be ruffled, with a solid or rigid pressing surface or holder, of a width to cover and flatten the ruffled or plaited material, substantially as described. (17) The combination, with a mechanism adapted to form a ruffle or plait, of a guide, provided with an inclosed channel-way, to guide the strip intended to be ruffled or plaited. (18) The combination, with a separator and a ruffling blade, of guides adapted to control and present the band, forming edges both above and below the strip to be ruffled, whereby a piece of fabric may be ruffled between two surfaces."

The original Robjohn patent does not anywhere in the statement of invention, or in any claim, suggest that his invention was anything else but the invention of mechanism for making a band-ruffle by means of two automatic guides, one to fold in the band and the other to guide the strip to be ruffled; or that he had invented a separator plate, or any means of ruffling a strip above a plain piece. The statement of the invention, in the original patent, is that it consists in combining the guides and the knife with a sewing-machine, the result of the joint action being that one guide, B, turns in both edges of a band and folds it longitudinally, so as to make a double band of it, and the other guide, E, which is a tubular guide, guides the strip to be ruffled and delivers it between the two edges of the band as they issue from the guide, B, and the knife makes the ruffle, and the two parts of the band and the ruffle are then sewed together by the needle, and a band-ruffle is formed. The real meaning of the original specification is best understood by seeing the alterations made in the reissue. There is in the latter a statement that the invention "consists in a ruffling blade or knife, adapted to engage a strip of material to be ruffled, in combination with a feeding mechanism, adapted to operate against the strip to which the ruffled strip is connected." This is new, and is in addition to a combination of the knife and the two guides. In the original the part $i$ is the "bottom part" of the guide, B; but in the reissue it is called a plate, and a support, which separates the material to be ruffled from the fabric to which it is to be united. In the original the guide E is said to be attached rigidly to the lower part of the guide B. This is omitted in the reissue. In the original the tongue, $h$, of the guide, E, is said to press on the strip to be ruffled, so as to keep it straight "on its way into the band;" but in the reissue the idea of the band in that connection is stricken out, and the pressure is said to be made to keep the strip straight "on its way to the action of the ruffling blade." In

the original the elastic shank, *j*, is said to press the edge of the knife down on "the bottom part of the guide;" but in the reissue it is said to press it down on "the support or plate, *i*." In the original the knife is said to have a movement "upon the bottom, *i*, of the guide, E, towards and from the needle-hole." In the reissue the knife is said to have "a movement." In the original "the feed movement" is said to carry "both band and ruffle towards the needle." In the reissue "the feeding device" is said to carry forward "both the band, or plain part to which the ruffle is attached, and the ruffle." In the original it is stated that "the ruffle strip is delivered into the fold of the band and ruffled by the action of the knife, as hereinbefore described, and sewed into the band by the needle passing through both the upper and lower parts of the band, close to the edges thereof." In the reissue it is said that "the strip resting on the support, *i*, is ruffled, delivered to the unruffled material or the band, by the action of the knife, as hereinbefore described, and the ruffled and plain fabric are united by the stitching mechanism of the sewing-machine, the needle, when operating with the band, passing through both the upper and lower parts thereof, close to the edges of the band." In the original it is stated that "in the ruffling operation the knife, F, is prevented from acting on the under part of the band by the extension of the lower part, *i*, of the guide, E, beyond the upper part and below the knife; the said part of the band passing under the extended portion of *i*, and the ruffle strip passing over it for the knife to act upon, and the said extended portion protecting the lower part of the band from the action of the knife." In the reissue it is said that "in the ruffling operation the blade or knife is prevented from acting on the band or plain fabric beneath the ruffle by the support or plate, *i*." These studied efforts to convert the bottom of the guide, E, into something other than the bottom of a guide, and into a supporting or secondary plate, dissevered from a guide, and to introduce the feature of ruffling a strip of goods above a plain piece, in addition to ruffling it in connection with a band which has two parts, an upper part and an under part, and thus to pave the way for introducing claims 8 and 9 of the reissue, are supplemented by the introduction into the reissue of the following new matter:

"The ruffled strip may be stitched, as formed, on to a plain fabric introduced under the guide, E, and between the support or plate, *i*, and the feeder, *r*, the latter engaging and moving the plain fabric with the ruffle attached, while the ruffling knife or blade engages **only** the strip to be gathered, and carries it forward to the needle."

The internal evidence thus afforded by the patents is fortified by the external evidence. The plaintiff, George H. Wooster, became the owner, on June 1, 1875, of the entire interest in the original Pipo patent. The interest in the Robjohn invention was vested in Mrs. Emma C. Wooster, the wife of the plaintiff, before the original patent was issued, and it was issued to her. On the seventeenth of

June, 1875, she assigned her interest in it to the plaintiff. He applied for the reissue of the Pipo patent on June 22, 1875, and for the reissue of the Robjohn patent on July 19, 1875. In the Pipo case, the application was signed by both Pipo and the plaintiff, the new specification was signed by Pipo, and the oath to it was made by Pipo, June 21, 1875. In the Robjohn case, the application was signed by the plaintiff, as assignee of Robjohn, the new specification was signed by the plaintiff, as assignee of Robjohn, and the oath to it was made by the plaintiff, July 17, 1875. In that oath the plaintiff deposed, "that he verily believes that, by reason of an insufficient specification, the aforesaid letters patent granted to E. C. Wooster, as assignee of Thomas Robjohn, are inoperative; that the said error has arisen from inadvertence, accident, or mistake, and without any fraudulent or deceptive intention, to the best of his knowledge and belief; that the entire title to said letters patent is vested in him; and that he verily believes the said Thomas Robjohn to be the first and original inventor of the invention set forth and claimed in the foregoing amended specification, and that the said Robjohn is now deceased." Although, as Robjohn was dead, the reissue may have been properly made, under section 4895 of the Revised Statutes, on an application made, and a corrected specification signed by the assignee, the reissue lacks the support which an oath by the inventor as to inadvertence, accident, or mistake might afford to it.

The circumstances under which the plaintiff applied for these reissues, after he thus became the owner of the two patents, and the object he had in view in doing so, are stated by himself. He was using the Pipo and Robjohn machines in the business of making ruffles. His attention was called to the Johnston ruffler and the Toof ruffler, as ruffling devices to be attached to sewing-machines; and he was applied to to sell the Robjohn patent, owned by his wife. He then examined the matter in connection with both patents, and concluded that they could be reissued with the claims now in them, so as to cover such ruffling attachments. He then purchased the Pipo patent, and took an assignment of the Robjohn patent, and applied for the reissues. The Johnston and the Toof rufflers were in the market. Patent No. 111,458, granted to Allen Johnston and William T. Johnston, January 31, 1871, for an "improvement in gathering attachments for sewing-machines," and patent No. 146,005, granted to Allen Johnston, December 30, 1873, for an "improvement in gathering and ruffling attachments for sewing-machines," describe and show the Johnston ruffler as it is sued herein. No. 111,458 shows the features in it which are alleged to infringe claims 1, 7, 8, and 10 of the Pipo reissue; and No. 146,005 shows the features in it which are alleged to infringe claims 8 and 9 of the Robjohn reissue.

The defendant's ruffling attachments are alleged to infringe claims 8 and 9 of the Robjohn reissue, because they have (1) a ruffling blade; (2) a secondary plate, separate from the cloth-plate of the sewing-

machine; (3) the cloth-plate, when in use, lying below the secondary plate, and the goods to be ruffled lying above the secondary plate, and between it and the blade, and a plain strip lying above the cloth-plate, and below the secondary plate, and between the two. The defendant's attachments do not have the combination claimed in claim 1 of the original Robjohn patent.

But it is contended for the plaintiff that claim 2 of the original Robjohn patent was capable of being construed in two ways. It read thus:

"(2d) In combination with the ruffling knife acting above the strip which is to form the ruffle, I claim the extension of a portion of the bottom, *i*, of the guide, E, or its equivalent, below the said knife, in such a position as to be interposed between the ruffle strip and the lower part of the band, substantially as and for the purpose herein specified."

It is said that the claim might have been construed as including in the combination only the part *i*, as being the part which really does the work of protecting the lower part of the band from the action of the ruffling knife; or it might have been construed as including not only the part, *i*, but the tube, E, with a covered top, from which the part, *i*, is extended, and which tube guides the piece to be ruffled. The argument is that claim 2 was, therefore, defective, because it was obscure or ambiguous, and uncertain in meaning, and insufficient in not clearly pointing out the invention desired to be covered; and that in neither claim 8 nor in claim 9 of the reissue is the tube or guide, E, an element.

Claim 2 of the original patent fully and clearly embodied the descriptive part of the original specification, which was in these words:

"In the ruffling operation the knife, F, is prevented from acting on the under part of the band, by the extension of the lower part, *i*, of the guide, E, beyond the upper part, and below the knife, the said part of the band passing under the extended portion of *i*, and the ruffle strip passing over it for the knife to act upon, and the said extended portion protecting the lower part of the band from the action of the knife."

So far as claim 2 of the original patent was concerned, the specification of that patent clearly and accurately described the invention which that claim sought to cover, and, so far as such description was concerned, there was no defect or insufficiency, and the patent was not invalid or inoperative to cover anything arising out of such description which was set forth as an invention. There is no evidence that that there was, in fact, any inadvertence, accident, or mistake.

Taking the language of claim 2 of the original patent, in connection with the descriptive part of the specification, the bottom, *i*, of the guide, E, is the lower part of a tubular guide which has an upper part, and it must be interposed between the ruffle strip and the lower part of such a double band as is described. No other band than a double band is anywhere mentioned in the original specification. It is a strip folded longitudinally by the guide, B, and having then an upper part and a lower part. It is folded along the center of its

width. The guide E is arranged in front of and partly within the guide B, and delivers the ruffle strip between the two edges of the double band. The two guides are rigidly attached together. One cannot be there to make the double band, without the other being present. The ruffled strip, between the upper and lower parts of the double band, is sewed to them, as the needle passes first through the upper part of the double band, then through the ruffled strip, and then through the lower part of the double band. It is the under part of this double band which is protected from the knife by the extension of the lower part, $i$, of the tubular guide, E, beyond the upper part of that guide, because such under part of the double band passes under the extended portion of $i$. There can be no double band without the guide B, and the guide E is rigidly attached to the guide B, and so the extended part of the lower part, $i$, of the guide E must be the extended part of the lower part of such a tubular guide as B is. There is no warrant, therefore, in the specification of the original patent, for extending the invention to cover the stitching of the ruffled strip on to a plain strip which is no part of a double band. The words "substantially as and for the purpose herein specified," in the original claim 2, refer to the purpose of protecting the lower part of a double band made by the guide B, by extending the lower part of the tubular guide E, which is rigidly attached to the guide B.

In view of the descriptive part of the original specification, claims 8 and 9 of the reissue could not have been sustained on that specification. There was no obscurity or ambiguity in the original claim 2. It was warranted by the description. That description authorized no claim as to the extension of a portion of $i$, different from what was claimed, as here interpreted, and the only admissible amendment of the claim, by the description as it stands, would have been one to interpret it in the same sense.

These considerations bring the case, as to the Robjohn reissue, within the decisions of the supreme court on the subject of reissues. *Gill* v. *Wells*, 22 Wall. 1; *Wood Paper Patent*, 23 Wall. 568; *Powder Co.* v. *Powder Works*, 98 U. S. 126; *Ball* v. *Langles*, 102 U. S. 128; *Miller* v. *Brass Co.* 104 U. S. 350; *James* v. *Campbell*, Id. 356; *Heald* v. *Rice*, Id. 737; *Johnson* v. *Railroad Co.* 105 U. S. 539; *Bantz* v. *Frantz*, Id. 160; *Wing* v. *Anthony*, 106 U. S. 142; S. C. 1 Sup. Ct. Rep. 93; *Hoffheins* v. *Russell*, 107 U. S. 132; S. C. 1 Sup. Ct. Rep. 570; *Gage* v. *Herring*, 107 U. S. 640; S. C. 2 Sup. Ct. Rep. 819; *Clements* v. *Odorless Excavating Apparatus Co.* 109 U. S. 641; S. C. 3 Sup. Ct. Rep. 525; *McMurray* v. *Mallory*, 111 U. S. 97; S. C. 4 Sup. Ct. Rep. 375; *Turner & Seymour Manuf'g Co.* v. *Dover Stamping Co.* 111 U. S. 319; S. C. 4 Sup. Ct. Rep. 401.

The bill must be dismissed, as to both reissues, because of their invalidity as respects claims 1, 7, 8, and 10 of the Pipo reissue, and claims 8 and 9 of the Robjohn reissue.

The application to introduce further evidence is granted as respects

the two affidavits of the plaintiff, and the files and contents in the matter of the reissues, but is denied in the other particulars.

No reason is seen why the defendant should not recover the costs of the cause.

The same rulings are made as to the case against Thornton and others.

In the case against Blake and others, the application to introduce further evidence is granted in the respects above indicated, and denied in the other particulars, and the suit as to them will proceed in course.